# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# AT BECKLEY

WAYNE ALLEN BEAHM,

    Plaintiff,

v.                                                                                     CIVIL ACTION NO. 5:21-cv-00547

D.L. YOUNG,
P. BOULET,
B. FAIN,
ROGER EDWARDS,
S. VEST,
S. PHIPPS,
M. GIBSON,
R. BROTRELL, and
FEDERAL CORRECTIONAL INSTITUTION BECKLEY,

    Defendants.

## MEMORANDUM OPINION AND ORDER

    Pending is Defendants D.L. Young, P. Boulet, B. Fain, Roger Edwards, S. Vest, S. Phipps, M. Gibson, R. Brotrell, and Federal Correctional Institution ("FCI") Beckley's motion to dismiss Plaintiff Wayne Allen Beahm's complaint or, in the alternative, for summary judgment, filed March 18, 2022. [Doc. 48]. Mr. Beahm responded April 18, 2022. [Doc. 54]. The matter is ready for adjudication.

### I.

    Mr. Beahm instituted this action on October 4, 2021, alleging violations of his constitutional rights pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971). [Doc. 2]. Specifically, he claims that the Defendants provided him

with inadequate medical care in violation of the Eighth Amendment after he injured his shoulder in November 2019 while working for UNICOR.[1] *Id.* The Court subsequently referred this case to the Honorable Omar J. Aboulhosn, United States Magistrate Judge, for submission of proposed findings and a recommendation ("PF&R"). [Doc. 3].

On March 18, 2022, the Defendants moved to dismiss Mr. Beahm's complaint or, in the alternative, for summary judgment. [Docs. 48, 51]. Mr. Beahm responded on April 18, 2022, opposing the Defendants' motion. [Doc. 54]. On December 19, 2022, Magistrate Judge Aboulhosn filed a PF&R, recommending that the Court grant the Defendants' motion. [Doc. 60]. He determined that (1) Defendant FCI Beckley could not be named as a defendant; (2) Defendant Fain, a Health Services Administrator at FCI Beckley, is entitled to absolute immunity; (3) Mr. Beahm had failed to allege sufficient facts to establish supervisory liability against Defendants Young, the former Warden at FCI Beckley; Boulet, the former Associate Warden at FCI Beckley; Gibson, Mr. Beahm's UNICOR Supervisor at FCI Beckley; Phipps, the UNICOR Operations Manager at FCI Beckley; and Brotrell, a Safety Administrator at FCI Beckley; (4) the Inmate Accident Compensation Act, 18 U.S.C. § 4126, precludes the recovery of damages under *Bivens* for work-related injuries; and (5) no genuine dispute of material fact exists that Defendants Edwards, a staff physician at FCI Beckley, and Vest, a family nurse practitioner at FCI Beckley, did not act with deliberate indifference when treating Mr. Beahm. *Id.*

Mr. Beahm timely objected on December 27 and 29, 2022. [Docs. 62, 63].[2] While

---

[1] UNICOR is the trade name for Federal Prison Industries, a wholly owned, self-sustaining Government corporation that sells market-priced services and quality goods made by inmates. *UNICOR*, Fed. Bureau of Prisons, https://www.bop.gov/inmates/custody_and_care/unicor.jsp (last visited Mar. 6, 2023).

[2] Despite the labels used by Mr. Beahm, based on the substance of these two filings, the Court construes them as objections to the PF&R.

he does not dispute that Defendants Young, Boulet, Fain, Phipps, Brotrell, and FCI Beckley should be dismissed, he maintains that Defendants Edwards and Vest were deliberately indifferent in their treatment of him. [Docs. 62, 63]. In support of this claim, he first objects that Edwards knew he had a torn rotator cuff in March 2020 and yet he did not receive an MRI until January 2021. [Doc. 62 at 2]. Next, Mr. Beahm objects that he never reported that his pain was improving or that he could do multiple pushups. *Id.* As his final objection, he alleges that he was instructed to continue working in UNICOR after his injury and that an employee at FCI Beckley informed him that medical staff had been instructed to provide inadequate medical care to save money. [Docs. 62 at 3, 63 at 1-2].[3]

## II.

The Court is required "to make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court need not review, under a de novo or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140 (1985). Further, the Court need not conduct de novo review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

---

[3] While Mr. Beahm reiterates allegations against Defendants Phipps and Brotrell [Doc. 63 at 3], he does not oppose their dismissal [Doc. 62 at 1]. The Court therefore does not construe that portion of the filing as an objection.

### III.

All of Mr. Beahm's objections are aimed at undermining Magistrate Judge Aboulhosn's finding that no genuine dispute of material fact exists that Defendants Edwards and Vest did not act with deliberate indifference. Accordingly, the Court must evaluate these disputes within the summary judgment context.

*Federal Rule of Civil Procedure* 56 provides that summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the nonmoving party to show that there is a genuine issue of material fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 246 (1986). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the allegations of her pleadings." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (quoting *Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)).

The Court must "view the evidence in the light most favorable to the [nonmoving] party." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (internal quotation marks and citation omitted); *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018). "The court . . . cannot weigh the evidence or make credibility determinations." *Jacobs v. N.C. Admin. Off. of the Courts*, 780 F.3d 562, 569 (4th Cir. 2015); *see Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). In general, if "an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." Fed. R. Civ. P. 56 advisory committee's note to 1963 amendment.

To prevail on an Eighth Amendment deliberate indifference claim, a plaintiff must establish (1) the objective "'deprivation of a basic human need' that is 'sufficiently serious,'" and

(2) "that the officials acted with a sufficiently culpable state of mind." *Moskos v. Hardee*, 24 F.4th 289, 297 (4th Cir. 2022) (quoting *De'lonta v. Johnson*, 708 F.3d 520, 525 (4th Cir. 2013)). An objectively serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021) (quoting *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008)). To establish a sufficiently culpable state of mind, the plaintiff must demonstrate that "the official subjectively knew of and disregarded an excessive risk to [his] health or safety." *Id.* (quoting *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014)).

"[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). "'Disagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances." *Hixson*, 1 4th at 302-03 (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). "To find the prison officials liable, the treatment given must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" *Id.* at 303 (quoting *Miltier v. Beorn*, 896 F.2d 848, 851 (4th Cir. 1990)). "[M]ere negligence or malpractice does not violate the [E]ighth [A]mendment." *Miltier*, 896 F.2d at 852 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Based on a thorough review of the facts in this case, Magistrate Judge Aboulhosn concluded that Edwards and Vest did not subjectively know of and disregard an excessive risk to Mr. Beahm's health or safety. [Doc. 60 at 36-48]. Specifically, he found that the evidence did not support Mr. Beahm's allegations that delays in treatment resulted in permanent injury. *Id.* at 45. But even crediting those allegations, Magistrate Judge Aboulhosn determined that Edwards and

Vest provided adequate medical care. *Id.* at 46-48.

### A. Knowledge of Torn Rotator Cuff

Mr. Beahm first objects that Edwards knew he had a torn rotator cuff in March 2020 and yet he did not receive an MRI until January 2021. [Doc. 62 at 2]. Had Edwards classified his injury as an emergency, Mr. Beahm contends, he would have received an MRI sooner and would have recovered from his injury. *Id.*

Mr. Beahm's assertions do not contradict Magistrate Judge Aboulhosn's factual findings. In March 2020, following physical therapy treatment, Edwards submitted a consultation request for an orthopedist to examine Mr. Beahm's shoulder. [Doc. 48-2 at 46]. As part of that request, Edwards noted that his provisional diagnosis was a rotator cuff injury. *Id.* At the end of March, Mr. Beahm was evaluated by an outside orthopedist, Dr. Stephen Whitfield, who suspected a rotator cuff tear and recommended an MRI and continued physical therapy. *Id.* at 90-94. Vest subsequently submitted a consultation request for an MRI in April 2020. *Id.* at 39, 348-50. Despite an initial target date of July 6, 2020, *id.* at 39, 348-50, Mr. Beahm's MRI was not conducted until January 2021 due to delays caused by the COVID-19 pandemic, *id.* at 2-3. Had the need for an MRI been time sensitive, Edwards asserts that alternative arrangements could have been made. *Id.* However, throughout this process, the priority was noted as routine and the level of care was noted as medically necessary, non-emergent. *Id.* at 2, 39, 46, 348-50.

At bottom, Mr. Beahm disagrees with the classification of his injury as non-emergent. But "'[d]isagreements between an inmate and a physician over the inmate's proper medical care' are not actionable absent exceptional circumstances," which are not present here. *Hixson*, 1 4th at 302-03 (quoting *Wright*, 766 F.2d at 849). After Mr. Beahm initially received physical therapy treatment, Edwards submitted a consultation request in March 2020, and Mr.

6

Beahm was examined by Dr. Whitfield later that month. Following Dr. Whitfield's recommendation, Vest subsequently submitted a consultation request in April 2020 for an MRI. Although an MRI was not performed until January 2021, this was the result of delays caused by the COVID-19 pandemic, not a disregard for Mr. Beahm's health. Indeed, in classifying Mr. Beahm's injury as medically necessary but non-emergent, Edwards and Vest demonstrated a lack of knowledge of any "excessive risk to [his] health or safety." *Hixson*, 1 F.4th at 302 (quoting *Jackson*, 775 F.3d at 178). Moreover, in line with the initial treatment plan, Dr. Whitfield also recommended that Mr. Beahm continue with physical therapy. Accordingly, even assuming the delayed MRI aggravated Mr. Beahm's injury, there is insufficient evidence to suggest that Edwards and Vest knew of this risk, much less disregarded it. Indeed, conventional, initial treatment for a torn rotator cuff typically consists of physical therapy. [Doc. 48-2 at 369 (citing *Rotator Cuff Tear*, WebMD (Aug. 11, 2020), https://www.webmd.com/pain-management/rotator-cuff-tear)]. The Court therefore **OVERRULES** this objection.

### B. Level of Pain

Mr. Beahm next objects that his shoulder pain never improved and in fact got worse after his surgery. [Doc. 62 at 2]. Moreover, he also disputes medical notes from his orthopedist, which recorded that he could do a number of pushups. *Id.*

Again, Mr. Beahm's objections do not contradict Magistrate Judge Aboulhosn's findings. His medical records reveal that his shoulder pain fluctuated from the time of his initial injury in November 2019 to the time of his surgery in April 2021. At times, he reported improvements with various treatments [Doc. 48-2 at 69-70, 62-67, 51-54, 49-50, 47-48, 46, 42-43, 39, 190-94], but at other times, he reported that his pain remained the same [Doc. 48-2 at 59-61, 90-93, 39, 31-36].

Prior to surgery, an orthopedist, Dr. Gordon Holen, discussed two potential options with Mr. Beahm: (1) arthroscopy with decompression and rotator cuff repair, and (2) reverse total shoulder arthroplasty. *Id.* at 298-305. With respect to the first option, Dr. Holen noted his concern that Mr. Beahm was suffering from "an irreparable rotator cuff with degenerative arthritis and acetabular station of the humeral head on the acromion." *Id.* at 300. Before undertaking surgery, Dr. Holen again discussed the two potential options with Mr. Beahm. *Id.* at 287-94. Despite being advised about the "large possibility that [his injury] is a chronic retracted rotator cuff tear . . . that will be irreparable," Mr. Beahm elected to proceed with the arthroscopy with decompression and rotator cuff repair. *Id.* at 288. Dr. Holen noted that the reverse total shoulder arthroplasty seemed to be "more surgery than [Mr. Beahm] was interested in." *Id.*

Following surgery, Mr. Beahm ultimately did not experience any pain relief. When his sutures were initially removed, he had no complaints, *id.* at 172, but at his first physical therapy appointment a few days later, he reported some aching in his shoulder, *id.* at 168-70. During his first post-operative appointment with Dr. Holen, he stated that his pain was controlled. *Id.* at 280-83. Dr. Holen explained that, while he expected the surgery to relieve some of the pain, it would not do so entirely and that the "definitive fixation would be a reverse shoulder arthroplasty." *Id.* Mr. Beahm responded that "he [was] very content, having not undergone [that] procedure." *Id.*

Beginning in June 2021, Mr. Beahm began to report soreness in his shoulder. *Id.* at 147-48. Still, at a second post-operative appointment with Dr. Holen, Mr. Beahm stated that he was "doing reasonably well." *Id.* at 278-79. Mr. Beahm disputes, however, that he reported that he could do a number of pushups.[4] Dr. Holen again explained "that definitive treatment for his

---

[4] Mr. Beahm later requested to see Dr. Holen to correct inaccuracies in his medical report. [Doc. 48-2 at 133].

8

underlying condition would be a reverse total shoulder arthroplasty." *Id.* Despite that guidance, Mr. Beahm elected to forgo further surgery. *Id.*

Unfortunately, Mr. Beahm reported having chronic shoulder pain in August 2021. *Id.* at 127-28. He was advised that he was not taking the proper dosage of his pain medication, *id.*, but at a third post-operative appointment with Dr. Holen, Mr. Beahm reported that his pain was now essentially the same as before his surgery. *Id.* at 275-76. Dr. Holen explained that, as noted before, the torn rotator cuff was irreparable and that the "[d]efinitive treatment would be a reverse total shoulder arthroplasty." *Id.* Mr. Beahm again declined that option because he wanted to have the surgery done after his release.[5] *Id.* Following that visit, Mr. Beahm continued to report pain in his right shoulder. *Id.* at 116, 318-22.

Consistent with his objections, the evidence indeed establishes that Mr. Beahm's pain did not improve after his surgery and may have gotten worse. But the fact that Mr. Beahm's surgery was unsuccessful does nothing to undermine the conclusion that Edwards and Vest did not act with deliberate indifference. As Dr. Holen explained to Mr. Beahm, the nature of his injury limited the relief that surgery could provide. Moreover, as previously discussed, even assuming the delayed MRI aggravated Mr. Beahm's injury, or reduced the chances of success of Mr. Beahm's chosen surgery, there is insufficient evidence to suggest that Edwards and Vest knew of this risk, much less disregarded it. Accordingly, the Court **OVERRULES** Mr. Beahm's objection.

### C. Allegations Against FCI Beckley Employees

Mr. Beahm finally objects that he was instructed to continue working in UNICOR after his injury and that an employee at FCI Beckley informed him that medical staff had been

---

[5] Dr. Holen also noted that Mr. Beahm requested the correction of inaccuracies in his medical report. [Doc. 48-2 at 275].

9

instructed to provide inadequate medical care to save money. [Docs. 62 at 3, 63 at 1-2].

As to the first issue, Mr. Beahm's medical records reveal that he reported to health services in November 2019 shortly after his accident. [Doc. 48-2 at 69-70]. He reported pain and bruising on his shoulder, but noted that his condition was slowly improving. *Id.* Still, Vest ordered an X-ray and instructed Mr. Beahm to report back if his condition worsened. *Id.* The subsequent X-ray was unremarkable and revealed no fracture or malalignment. *Id.* at 95-97. Over the next few months, Mr. Beahm was given pain medications and began physical therapy. *Id.* at 62, 59-61, 57-58, 55-56, 51-54, 49-50, 47-48. Then in March 2020, Edwards submitted a consultation request to an outside orthopedist. *Id.* at 46.

Accordingly, even assuming that Mr. Beahm was instructed to continue working after the accident, he was also instructed to return to health services if his condition worsened. Given that Mr. Beahm initially advised Vest that his condition was slowly improving, such a course of action fails to establish that Vest "subjectively knew of and disregarded an excessive risk to [Mr. Beahm's] health or safety." *Hixson*, 1 F.4th at 302 (quoting *Jackson*, 775 F.3d at 178). The Court thus **OVERRULES** Mr. Beahm's objection.

Finally, Mr. Beahm alleges that an employee at FCI Beckley informed him that medical staff had been instructed to provide inadequate medical care to save money. [Doc. 62 at 3]. Such an allegation is hearsay. The employee was not under oath when the statement was made, and Mr. Beahm seeks to offer it for the truth of the matter asserted. Fed. R. Evid. 801(c). Consequently, the statement may not be considered. Fed. R. Evid. 802. The Court therefore also **OVERRULES** this objection.

IV.

For the foregoing reasons, the Court **OVERRULES** Mr. Beahm's objections [**Docs. 62, 63**], **ADOPTS** the Magistrate Judge's PF&R [**Doc. 60**], **GRANTS** the Defendants' motion to dismiss the complaint or, in the alternative, for summary judgment [**Doc. 48**], and **REMOVES** this matter from the docket.

The Court **DIRECTS** the Clerk to transmit a copy of this written opinion and order to counsel of record and any unrepresented party.

ENTER: March 14, 2023

Frank W. Volk
United States District Judge